J-S57015-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| HAROLD LEROY BARNETT | |
| Appellant | No. 2935 EDA 2014 |

Appeal from the PCRA Order September 25, 2014
In the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-CR-0001379-2010

BEFORE:  MUNDY, J., OTT, J., and STABILE, J.

MEMORANDUM BY OTT, J.:                    **FILED JANUARY 06, 2016**

Harold Leroy Barnett appeals the order entered September 25, 2014, in the Bucks County Court of Common Pleas, denying his petition for collateral relief filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9543-9546.  Barnett seeks relief from the judgment of sentence of 25 to 50 years' imprisonment, imposed following his jury conviction of two counts each of unlawful contact with a minor, indecent assault, and corruption of minors[1] for his sexual abuse of two minor females.  On appeal, Barnett raises three challenges to the ineffective assistance of trial counsel. For the reasons below, we affirm.

---

[1] 18 Pa.C.S. §§ 6318(a)(1), 3126(a)(7), and 6301(a)(1).

The facts underlying Barnett's convictions are well-known to the parties, and detailed in the opinion of this Court affirming Barnett's sentence on direct appeal. *See Commonwealth v. Barnett*, 50 A.3d 176, 180-181 (Pa. Super. 2012). Accordingly, we need not reiterate them herein. For purposes of this appeal, we note only that in December of 2009, the two victims, 11-year old B.M. and nine-year old M.W., reported to the police that Barnett had been sexually abusing them. Barnett is the uncle of both B.M.'s mother's paramour, and M.W.'s father, and the girls would often stay with or visit Barnett and his wife. B.M. stated the abuse began in 2007, when she was nine years old, and continued until November of 2009. M.W. recounted two times in 2009 when Barnett touched her inappropriately.

Barnett was arrested and charged with rape of a child and aggravated indecent assault[2] with regard to B.M., and two counts each of unlawful contact with a minor, indecent assault, and corruption of minors, with regard to both victims. Following a jury trial in December of 2010, Barnett was acquitted of rape and aggravated indecent assault, but convicted of the remaining charges. The Commonwealth waived a sexually violent predator assessment of Barnett by the Sexual Offenders Assessment Board, and on January 27, 2011, Barnett was sentenced to a mandatory minimum 25 to 50 years' imprisonment, pursuant to 42 Pa.C.S. § 9718.2 (mandatory 25 years'

---

[2] 18 Pa.C.S. §§ 3121(c), and 3125(a)(7), respectively.

imprisonment for second sexual offense).[3]  He filed a motion for reconsideration of sentence, which was denied by the trial court.  As noted above, Barnett's judgment of sentence was affirmed by this Court,[4] and the Pennsylvania Supreme Court later denied allocator review.  **See Barnett**, **supra**, *appeal denied*, 63 A.3d 772 (Pa. 2013).

On December 19, 2013, Barnett filed a timely, *pro se* PCRA petition, asserting 17 grounds for relief.  Counsel was appointed and filed both an amended and second amended petition, narrowing the issues to several claims of the ineffectiveness of trial counsel.  The PCRA court conducted a hearing on July 3, 2014, during which Barnett, two witnesses, and trial counsel testified.  Thereafter, on September 25, 2014, the PCRA court entered an order denying Barnett relief.  This timely appeal follows.[5]

_____

[3] In 1978, Barnett pled guilty in California to a charge of incest for the sexual assault of his daughter.

[4] Barnett raised four issues on direct appeal:  (1) the trial court abused its discretion in admitting hearsay testimony regarding the victims' out-of-court statements; (2) the trial court abused its discretion in permitting the Commonwealth's expert urologist to testify; (3) the trial court erred in allowing B.M's handwritten statement to go out to the jury during deliberations; and (4) Section 9718.2 of the Sentencing Code constitutes cruel and unusual punishment.  **Barnett**, **supra**, 50 A.3d at 181-182.

[5] On October 14, 2014, the PCRA court ordered Barnett to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Barnett complied with the court's directive, and filed a concise statement on October 22, 2014.

Barnett raises three issues on appeal, each asserting the ineffective assistance of trial counsel.

> Our standard of review of an order denying PCRA relief is whether the record supports the PCRA court's determination and whether the PCRA court's decision is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record.

*Commonwealth v. Lawson*, 90 A.3d 1, 4 (Pa. Super. 2014) (internal citations omitted).

With regard to Barnett's specific claims, we note:

> In order to obtain relief on a claim of counsel ineffectiveness, a PCRA petitioner must satisfy the performance and prejudice test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In Pennsylvania, we have applied the *Strickland* test by requiring that a petitioner establish that (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the result of the proceeding would have been different. *Commonwealth v. Pierce*, 567 Pa. 186, 786 A.2d 203, 213 (2001). Counsel is presumed to have rendered effective assistance, and, if a claim fails under any required element of the *Strickland* test, the court may dismiss the claim on that basis. *Commonwealth v. Ali*, 608 Pa. 71, 10 A.3d 282, 291 (2010).

*Commonwealth v. Reid*, 99 A.3d 470, 481 (Pa. 2014).

In his first issue, Barnett contends trial counsel was ineffective for failing to question him regarding an incident when he removed B.M. from a movie theater during explicit scenes in the movie "Bruno," because it would have supported his innocence. By way of background, at the PCRA hearing, Barnett testified he took his 14-year old grandson to the movie, where he

met B.M. and her mother. Barnett stated his wife had warned him there was nudity in the movie, and when he informed B.M.'s mother, she responded, "it will be all right, it's just minor." N.T., 7/3/2014, at 19. However, during one scene in the beginning of the movie, there was a picture of a penis with semen coming out of it. *Id.* at 19-20. Barnett testified B.M.'s mother tried to put her hands in front of the girl's eyes to shield her, but Barnett grabbed B.M. by the hand and pulled her out of the theater. He further stated that he tried to go back to get his grandson, but he could not leave B.M. alone.

Barnett now asserts he told trial counsel about this incident, and argues counsel should have questioned him about the event, which he claims "supported his innocence by demonstrating his outrage" at the displayed nudity. Barnett's Brief at 12. He further argues counsel had no reasonable basis for failing to present this evidence because "the alternative not chosen here, (to present this evidence) offered potential for success substantially greater than the course actually pursued." *Id.*

Trial counsel testified during the PCRA hearing that, although he initially considered questioning Barnett about the movie incident, he later decided not to do so because he believed the testimony could be harmful to the defense. Counsel explained:

> I thought that [Barnett] was doing very well in his direct examination. I thought he was coming across as very credible. He was – he made a good appearance. He answered the questions strongly. His denial was very strong; I thought very believable.

And I didn't see the benefit of bringing that movie in and subjecting him to potential cross-examination on it when I thought that his direct limited some of the cross-examination that might be – from the district attorney.

* * * *

The concerns, obviously, when you're talking with allegations that we have versus testimony of watching male genitalia and sexual acts, and he grabs the one child and immediately takes her out, but doesn't take the other child out could be questioned, the motive of why he would take [B.M.] out at that time as opposed to saying to her mother: Take her out. Let's go. All four of us go.

The fact that he would grab one child, just her, and leave, could be interpreted different ways. It could be interpreted that he did not want her to see certain things because of actions that were similar to that.

N.T., 7/3/2014, at 66-67. Under cross-examination, trial counsel further testified that "the entire incident was a double-edged sword[,]" because it could be argued that Barnett was either protecting B.M., or that he was protecting himself. *Id.* at 84. Therefore, counsel decided not to question Barnett about the incident.

The PCRA court concluded counsel had a reasonable strategic basis for failing to question Barnett about the incident. *See* PCRA Court Opinion, 2/3/2015, at 7. We agree. When considering whether counsel had a reasonable basis for his actions or inaction,

we do not question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had **any reasonable basis**. We will conclude that counsel's strategy lacked a reasonable basis only if the petitioner proves that a foregone alternative offered a potential for success **substantially greater** than the course actually pursued.

*Commonwealth v. Roney*, 79 A.3d 595, 604 (Pa. 2013) (internal punctuation and citations omitted; emphasis supplied), *cert. denied*, 135 S. Ct. 56 (U.S. 2014).

Assuming, *arguendo*, this claim is of arguable merit, counsel had a reasonable, strategic basis for choosing not to question Barnett about the movie incident. As trial counsel testified, the jury may have interpreted Barnett's actions, in ushering **only** B.M. out of the theater, as a means to prevent her from disclosing to her mother the fact that Barnett had been sexually abusing her.[6] Therefore, his decision not to question Barnett about the movie incident was a strategic decision. Further, Barnett has failed to establish he was prejudiced by counsel's omission, that is, he failed to demonstrate "there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction." *Roney*, *supra*, 79 A.3d at 604 (citation omitted). His bald allegation that this testimony was "crucial to the defense" is simply not supported by the record. Barnett's Brief at 13. Accordingly, no relief is warranted on this claim.[7]

_____

[6] We note that Barnett's claim on appeal that he was "outraged" by the explicit images is not supported by his testimony at the PCRA hearing. **See** N.T., 7/3/2014, at 20 (Barnett stating only that he "grabbed [B.M.] and pulled her out of the movie.").

[7] We decline to adopt the Commonwealth's contention that this issue is waived because Barnett did not include it in his post-hearing PCRA brief. **See** Commonwealth's Brief at 28-29. This issue was raised in Barnett's *pro*
*(Footnote Continued Next Page)*

Next, Barnett argues trial counsel was ineffective for failing to request a "prompt complaint" jury instruction. When considering whether a "prompt complaint" charge is necessary and appropriate, we must bear in mind the following:

> The premise for the prompt complaint instruction is that a victim of a sexual assault would reveal at the first available opportunity that an assault occurred. The instruction permits a jury to call into question a complainant's credibility when he or she did not complain at the first available opportunity. However, there is no policy in our jurisprudence that the instruction be given in every case.
>
> "The propriety of a prompt complaint instruction is determined on a case-by-case basis pursuant to a subjective standard based upon the age and condition of the victim." For instance, "[w]here an assault is of such a nature that the minor victim may not have appreciated the offensive nature of the conduct, the lack of a prompt complaint would not necessarily justify an inference of fabrication."

*Commonwealth v. Sandusky*, 77 A.3d 663, 667 (Pa. Super. 2013) (internal citations omitted).

Here, Barnett contends trial counsel should have requested a "prompt complaint" charge, which instructs the jury, *inter alia*, the victim's "[delay in

_____

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯

se, amended and second amended petitions, and argued during the evidentiary hearing. While we acknowledge it was not addressed in his post-hearing brief, we find the claim was not abandoned by Barnett and has been preserved for our review. **See** Memorandum of Law in Support of [] Barnett's Post Conviction Relief Act Petition, 8/28/2014, at 2 ("This brief is filed in compliance with Honorable Jeffrey L. Finley's order and undersigned counsel **highlights** three issues from the PCRA Petition below.") (emphasis supplied).

making a complaint] should be considered in evaluating [her] testimony and in deciding whether the act occurred [at all] …." S.S.J.I. (Crim) 4.13A(2). He argues both victims failed to promptly report Barnett had sexually abused them. Further, he asserts a "prompt complaint" charge is relevant even when the victim is a minor, so long as "the actual occurrence of a sexual act is at issue and the victim comprehends the offensiveness of the sexual assault at the time of the occurrence[.]" Barnett's Brief at 15, *citing* **Commonwealth v. Ables**, 590 A.2d 334 (Pa. Super. 1991), *appeal denied*, 597 A.2d 1150 (Pa. 1991).

With regard to the ineffectiveness prongs, Barnett argues this claim has arguable merit because the victims could not specify the dates on which the alleged assaults occurred, and, therefore, "their credibility was central to trial counsel's strategy." Barnett's Brief at 20. Moreover, he asserts that although both victims were minors, their testimony demonstrated they understood the sexual acts were improper. With regard to the second prong, Barnett contends trial counsel had no reasonable basis for his failure to request a "prompt complaint" charge.[8] Lastly, Barnett contends he was prejudiced by counsel's dereliction because his defense strategy "hinged on B.M.'s fabrication of the sexual offenses in coordination with her mother[; …

---

[8] Indeed, during the PCRA hearing, counsel testified he did not ask for a "prompt complaint" charge simply because he "didn't think it was appropriate" under the facts of the case. N.T., 7/3/2014, at 73.

w]ithout a prompt complaint jury charge, the factfinder was not directed as to how to interpret the victims' delay in reporting." Barnett's Brief at 21.

The PCRA court concluded that a "prompt complaint" jury charge was not warranted under the facts of this case. The court explained that both victims were nine years old when the assaults began, and each time the abuse occurred "at the home of [Barnett], a family member, and/or while [Barnett] had custody or control over the victims." PCRA Court Opinion, 2/3/2015, at 14. Further, the court found the victims' descriptions of the assaults, at the time they reported them to the police, "also reflect[ed] their immaturity, their lack of knowledge of sexual activity, and their lack of understanding of the severity of [Barnett's] actions towards them." *Id.*, *citing* N.T., 12/2/2010, at 65 (testimony of B.M. describing Barnett's actions as "rubbing his thingy on her vagina" and semen as "white creamy stuff"). Importantly, while the PCRA court acknowledged Barnett did not use physical force during the sexual assaults, it noted he abused the victims at a time when he had "authority or control" over them. Trial Court Opinion, 2/3/2015, at 15. Accordingly, the court found Barnett's claim had no arguable merit.

We agree. As noted above, there is no requirement that a "prompt complaint" charge be given in every case,[9] and, here, the PCRA court, which

_____

[9] *Sandusky*, *supra*.

also presided over Barnett's trial, explained why the instruction would not have been appropriate had it been requested. Furthermore, we find that even if the claim had arguable merit and counsel had no reasonable basis for failing to request the charge, Barnett has failed to demonstrate he was prejudiced as a result. This Court's decision in **Sandusky**, **supra**, is instructive.

In **Sandusky**, the defendant, over a 13-year period, sexually abused eight boys he met through a non-profit organization for at-risk youth. **Sandusky**, **supra**, 77 A.3d at 666. Despite the fact that the victims did not report the abuse for several years, some for more than a decade, the trial court declined to give the jury a "prompt complaint" instruction. On direct appeal, the defendant argued the trial court erred in refusing to give the requested charge.

Although a panel of this Court found the trial court erred when it failed to evaluate the appropriateness of the charge with respect to each individual victim, the panel ultimately determined the court's error was harmless. **Id.** at 668. The trial court provided the jury with the standard credibility charge, which instructed them, *inter alia*, to consider whether the testifying witnesses had "any interest in the outcome of the case, anything to gain or lose … [a]ny bias, any prejudice, or any other motive that might affect his or her testimony." **Id.** at 669 (emphasis omitted). This Court explained:

> This instruction provided the jury with a sufficient framework to question the victims' credibility. In addition, at trial, Sandusky extensively argued that the victims not only delayed in

reporting, but that they did so because the abuse never occurred and that they concocted their stories for financial gain. As stated above, the trial court specifically instructed the jury that they were to consider any possible motives of the victims in coming forward. The vigorous cross-examination of the victims and arguments by defense counsel, when combined with the trial court's instructions on credibility, clearly defined the issues for the jury. Therefore, we find that, under the facts of this case, the absence of the prompt complaint instruction did not prejudice Sandusky.

*Id.*

The same is true in the present case. Here, the trial court provided the following instructions to the jury when considering the credibility of the testifying witnesses:

You must consider and weigh the testimony of each witness and give it such weight as you, in your judgment, believe it is fairly entitled to invest. The matter of the credibility of a witness, that is, whether that witness's testimony is believable and accurate in whole or in part is solely for your determination.

Let me just mention some of the factors that might come to bear on your determination of credibility. Consider whether the witness has any interest in the outcome of the case or has friendship or animosity towards other persons concerned in the case. **Consider the behavior of the witness on the witness stand, his or her demeanor, his or her manner of testifying and whether or not that witness shows any bias or prejudice which might color his or her own testimony**, the accuracy of his memory and recollection, his or her ability and opportunity to acquire knowledge of or to observe the matters concerning which he or she testifies, the consistency or inconsistency of the witness's testimony as well as its reasonableness or unreasonableness in light of all the evidence presented in this case.

N.T., 12/6/2010, at 8-9 (emphasis supplied). This charge is substantially similar to that deemed satisfactory in **Sandusky**.[10] Furthermore, like the defense in **Sandusky**, here, Barnett argued the abuse never occurred and the story was concocted by B.M.'s mother. **See** N.T., 12/3/2010 (Closing Arguments), at 7-10. He emphasized the difficulty in "prov[ing] a negative" years after the abuse purportedly occurred. **See id.** at 12-13. Accordingly, we find Barnett has failed to demonstrate he was prejudiced by the omission of a "prompt complaint" charge, and, therefore, is entitled to no relief on his second claim.

In his last issue, Barnett argues counsel was ineffective for failing to call as witnesses two of his neighbors, Wally and Roberta Freimanis, who were prepared to testify that Barnett's mother-in-law, who died prior to trial, lived with him during the time the sexual assaults purportedly occurred, and rarely left the house. Barnett asserts counsel was aware of these witnesses, and both were available and willing to testify at his trial.[11] Further, although

_____

[10] We note the **Sandusky** decision involved a direct appeal, and this Court found the lack of a prompt complaint charge, in light of the credibility instructions, was harmless error, i.e., "the error could not have contributed to the verdict[.]" **Sandusky**, **supra**, 77 A.3d at 668 (citation omitted). In the present case, the prejudice standard is somewhat more stringent in that Barnett was required to demonstrate more than that the error "could have contributed" to the jury's verdict, but rather, that there was a "reasonable probability that the result of the proceeding would have been different." **Reid**, **supra**, 99 A.3d at 481.

[11] Both Wally and Roberta Freimanis testified during the PCRA hearing, and cooroborated Barnett's claims that (1) his mother-in-law lived with him
*(Footnote Continued Next Page)*

- 13 -

he acknowledges there was testimony at trial that his mother-in-law lived with him during the time of the alleged assaults, he argues the Freimanises would have "corroborated that testimony, from an unbiased source."[12] Barnett's Brief at 23.

When an allegation of ineffectiveness is based upon counsel's failure to call a witness, a petitioner must establish that:

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

*Commonwealth v. Sneed*, 45 A.3d 1096, 1108-1109 (Pa. 2012).

Here, the testimony at the PCRA hearing clearly demonstrated the Freimanises were known to defense counsel, and were ready and willing to testify on Barnett's behalf at the time of trial. However, the PCRA court concluded that Barnett "failed to establish that he was denied a fair trial or prejudiced by the absence of this testimony." PCRA Court Opinion, 2/3/2015, at 17. The court opined:

*(Footnote Continued)* ————————————

during the time of the alleged assaults; (2) she rarely left the house; and (3) they were available and willing to testify at the time of Barnett's jury trial. *See* N.T., 7/3/2013, at 35-38, 42-43.

[12] The Commonwealth did not deny the fact that Barnett's mother-in-law also lived in his home at the time of the offenses. *See* N.T., 12/2/2010, at 39 (testimony of B.M.), 93 (testimony of M.W.). Barnett's wife, Donna, also testified her mother lived with her and Barnett when the abuse allegedly occurred. *Id.* at 187, 192. *See also* N.T., 12/3/2014, at 7, 27.

> During trial, the jury heard this same evidence - that [Barnett's] mother-in-law was also living in the Barnett home during the relevant time frame - through several other witnesses including the victim's (sic), B.M and M.W., and Donna Barnett. This evidence was not challenged in any way by the Commonwealth. The testimony of Roberta and Wally [Freimanis] would not have informed the jury of anything they did not already know. In fact, the [Fremanises'] testimony may have been ruled inadmissible as cumulative testimony. As a result, [Barnett] was not prejudiced by [t]rial [c]ounsel's failure to call Wally and Roberta [Freimanis] as witnesses, and this claim must fail as well.

*Id.* (record citation omitted). We agree with the analysis of the PCRA court, and rest on its well-reasoned basis.

Therefore, finding all of Barnett's ineffectiveness claims meritless, we affirm the order of the PCRA court dismissing his collateral petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/6/2016